UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL ESTRELLA S.,

        Plaintiff,

  -v-                                  5:17-CV-838

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON      STEVEN R. DOLSON, ESQ.
Attorneys for Plaintiff
126 North Saline Street, Suite 3B
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL    JOANNE JACKSON
   SOCIAL SECURITY ADMINISTRATION      PENGELLY, ESQ.
   REGION II                        Special Ass't United States Attorney
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10019

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Daniel Estrella S.[1] ("Daniel" or "plaintiff") brings this action seeking review of

defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision

---

    [1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

denying his application for Disability Insurance Benefits ("DIB"). Both parties have filed their briefs, and defendant has filed the Administrative Record on Appeal. The motions will be considered on the basis of these submissions without oral argument.[2]

## II. BACKGROUND

On April 22, 2016, Daniel filed an application for DIB alleging that his various mental impairments rendered him disabled beginning on June 23, 2015. R. at 144-50.[3] Plaintiff's claim was initially denied on July 1, 2016. *Id*. at 69-78.

At Daniel's request, a hearing was held before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke on September 26, 2016. R. at 39-53. Plaintiff, represented by non-attorney Matthew F. Nutting, appeared and testified. *Id*. The ALJ conducted a supplemental hearing on December 20, 2016, at which time she heard additional testimony from Vocational Expert ("VE") David A. Festa. *Id*. at 30-36.

Thereafter, the ALJ issued a written decision denying Daniel's application for benefits through January 11, 2017. R. at 12-23. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-4.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial

---

[2] Pursuant to General Order No. 18, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

[3] Citations to "R." refer to the Administrative Record. Dkt. No. 6.

evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  *See id.*  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

 However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B.  Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires

that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is

disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine

whether the claimant has engaged in substantial gainful activity. A claimant engaged in

substantial gainful activity is not disabled, and is therefore not entitled to

benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires

the ALJ to determine whether the claimant has a severe impairment or combination of

impairments which significantly restricts his physical or mental ability to perform basic work

activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of

impairments, then step three requires the ALJ to determine whether, based solely on medical

evidence, the impairment or combination of impairments meets or equals an impairment

listed in Appendix 1 of the regulations (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d); *see*

*also id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments

meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*,

70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Perez*, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. ALJ's Decision

Applying the five-step disability determination process, the ALJ found that: (1) Daniel had not engaged in any substantial gainful activity since June 23, 2015, the alleged onset date; (2) plaintiff's mental impairment was "severe" within the meaning of the Regulations; (3) this mental impairment, however characterized, did not meet or equal any of the Listings. R. at 14-17.

As the ALJ explained, "[d]uring any given encounter, mental health professionals have

given the claimant various diagnoses and characterized his mental impairment in various ways (posttraumatic disorder, personality disorder, depressive disorder, anxiety disorder, and polysubstance use disorder, in sustained remission). In determining whether an individual is disabled, what the impairment is called is of no real consequence: rather how a given impairment affects mental functioning is the central inquiry under the Act." R. at 15.

At step four, the ALJ determined that while Daniel had no exertional limitations, his mental impairment limited his ability to do work-related mental activities. R. at 17. After analyzing the evidence in the record, the ALJ found that plaintiff retained the RFC to:

> understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; handle simple, repetitive work-related stress in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work of others; should avoid work requiring more complex interaction or joint effort to achieve work goals; and can tolerate superficial contact with the public.

R. at 17.

Based on these findings, the ALJ determined that Daniel could not perform any of his past relevant work. R. at 21. However, the ALJ found that plaintiff could still perform jobs such as "industrial cleaner," "hand packager," and "hospital cleaner." R. at 22. Because these jobs fit in with plaintiff's assessed limitations and were present in sufficient numbers within the national economy, the ALJ concluded plaintiff was not disabled during the relevant time period. *Id*. at 22-23. Accordingly, the ALJ denied plaintiff's application for benefits.

### D. Daniel's Appeal

Daniel does not challenge any of the ALJ's findings about his mental impairment or any of her conclusions about its limiting effect on his ability to sustain work-related

activities. Instead, plaintiff's appeal faults the ALJ for failing to assess any *physical* limitations linked to his "messed up back, knee, thumb, and right shoulder."

Daniel's claim of exertional limitations is based on a September 2016 medical source statement completed by Iram Siddiqui, M.D. R. at 390-92. Plaintiff contends that Dr. Siddiqui is one of his "treating" physicians at the Department of Veterans Affairs ("VA") in Syracuse, the clinic where plaintiff has received ongoing health care since 2013. *See* Pl.'s Mem. at 5.[4]

Dr. Siddiqui's medical source statement indicates that Daniel suffers from several musculoskeletal problems: "lumbosacral spondylosis; chronic knee pain; [and] chronic shoulder pain." R. at 390. According to this document, these diagnoses cause a panoply of significant functional limitations and prevent plaintiff from performing the full range of physical work-related activities. *Id*.

The exertional restrictions assessed by Dr. Siddiqui include limits on the amount of weight Daniel can lift (never more than 50 lbs.), the frequency with which he can do so (fewer than 10 lbs., but even then only occasionally), the frequency with which he can use his neck to look up or down (rarely), the frequency with which he can twist (never), stoop (never), crouch (never), climb ladders (never), or climb stairs (rarely), and even how frequently he can manipulate objects with his hands or fingers (rarely, in either case). R. at 390-91.

Daniel accuses the ALJ of giving short shrift to Dr. Siddiqui's findings at every relevant stage of the sequential disability analysis. In plaintiff's view, Dr. Siddiqui's opinion about plaintiff's physical limitations stands uncontradicted in the record and therefore the ALJ was

---

[4] Pagination corresponds with CM/ECF.

required to incorporate his findings into her RFC calculation.

Upon review, this argument must be rejected. It is true, as Daniel argues, that the ALJ chose to discount Dr. Siddiqui's September 2016 opinion—the ALJ assigned Dr. Siddiqui's findings only "limited weight" during her narrative discussion of the medical opinion evidence, R. at 20, and then failed to incorporate any of Dr. Siddiqui's assessed physical limitations into her RFC calculation at step four, *id*. at 17.

However, under the particular circumstances of this case, this does not amount to error, reversible or otherwise. A thorough discussion of the facts helps to illustrate why the ALJ acted permissibly in this case. First, it bears noting that Daniel's initial, self-reported disability application listed only "PTSD," "Major Depressive Disorder," and "ADD" as disabling conditions in response to the document's instruction that he should "[l]ist all of the physical *and* mental conditions . . . that limit your ability to work." R. at 186 (emphasis added).

Elsewhere, the record indicates that up until Daniel filed this disability application, he had worked various physical jobs, most recently as a welder, a job which required him to lift up to seventy pounds. R. at 41, 276. Plaintiff claimed to have left that job not because of physical problems, but because "he was having significant and persistent work disruptions" attributable to "PTSD symptoms." *Id*. at 276. In fact, plaintiff readily acknowledged that his "poor work performance and recurring problems" were attributable to "behavior problems." *Id*.

Daniel's self-reported assertions roughly track a supporting document submitted by plaintiff's girlfriend, who indicated "none" in response to a section of a disability questionnaire that asked whether the disabled applicant was at all limited in lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, or using their hands. R. at 198. Instead

- 8 -

of claims of *physical* limitation, plaintiff's girlfriend's responses on this document further support plaintiff's underlying claim of disabling *mental* impairments. *Id*. at 193-200.

The various medical records in Daniel's file also confirm a history of serious and possibly disabling mental impairments, not physical ones. For instance, a VA health summary from April 25, 2015 reported plaintiff had "no difficult with walking and moving." R. at 292. A May 17, 2016 physician's note indicates plaintiff had "no muscle, back pain, joint pain or stiffness," *Id*. at 345, and notes from a day later show that a nurse again documented that plaintiff had "no" musculoskeletal issues, and that he "ambulates with a steady gait." *Id*. at 316-17.

Both parties point out that Daniel underwent a chest x-ray on October 27, 2014 to investigate the cause of his dyspnea, medical jargon for shortness of breath. R. at 364-65. As relevant here, this imaging study noted "mild degenerative changes" in plaintiff's spine. *Id.* And a few years later, on February 22, 2016, Daniel underwent another X-ray, this time to evaluate the cause of his "right shoulder pain." R. at 360.

This later study noted that Daniel had experienced a history of "right shoulder pain," and compared the current X-ray to a previous X-ray taken on July 31, 2013. R. at 360. The study noted "degenerative disease of the right acromioclavicular joint" that resulted in a "slight widening of the joint which is unchanged." *Id*. In all, though, the study concluded there was "no significant change compared to the prior x-rays." *Id*. at 361.

Later that year, on May 11, 2016, Dr. Siddiqui's name does appear in one of these VA health summaries as a "referring provider" for physical therapy. R. at 350. According to this document, Daniel's primary care provider referred him to physical therapy to alleviate some right shoulder pain he was experiencing after an incident where he "slipped on the snow

getting out of his truck." *Id*.

Notably, however, this document indicates that "0" minutes of physical therapy were provided—Daniel cancelled future appointments because, according to him, he was scheduled to undergo surgery to repair the affected shoulder. R. at 350. Strangely, and as the Commissioner notes in opposition, the surgical procedure plaintiff actually underwent was not to his shoulder but is instead labeled as a "right breast lumpectomy." *Id*. at 352.

Against this backdrop of mostly normal physical findings, Daniel testified at the first ALJ hearing that he stopped working because of his "PTSD" and the medication he took to help alleviate its symptoms. R. at 44. At that time, plaintiff went on to testify to a series of possible physical impairments as well. *Id*. at 44-46, 49-51.

Following the hearing, the ALJ's written decision acknowledges that Daniel's hearing testimony broadened the scope of his allegedly disabling conditions beyond just the mental impairments he claimed in his application. *See* R. at 15 (citing plaintiff's testimony as justification for considering his "back pain, right knee pain, right shoulder pain, and arthritis in thumb").

Even so, the ALJ concluded that Daniel's physical limitations were not "severe" within the meaning of the Regulations. She reasoned:

> Although progress notes reference[ ] issues associated with the claimant's shoulder, knee, thumb, and back (Exhibit 3F, page 64), the physical examination did not identify any abnormal clinical findings associated with these conditions, and instead indicated that he had no musculoskeletal deficits present (Exhibit 3F, page 75). A subsequent evaluation indicated that the claimant had no muscle pain, back pain, joint pain, stiffness, or numbness or tingling in his extremities (Exhibit 3F, page 107). A CT Scan from October 2014 showed only incidental findings of mild degenerative changes of the spine (Exhibit 3F, page 126). The claimant was also able to drive around in his truck, which suggests his musculoskeletal impairments

are not as limiting as alleged (Exhibit 3F, page 112). The claimant sustained a right shoulder injury, and an x-ray of his right shoulder from February 2016 showed evidence of degenerative disease of the right acromioclavicular joint (exhibit 3F, page 122). The claimant reported that he was going to undergo right shoulder surgery in May 2016 (exhibit 3F, page 112). However, the record does not document any ongoing treatment for his right shoulder injury.

R. at 16.

As this block quotation from the ALJ's step two determination makes clear, she carefully considered the relevant portions of the medical record; that is, the portions of the record on which Daniel relies to sustain this appeal. The ALJ determined that although plaintiff has (or had) treatment for one or more physical diagnoses, the record failed to establish that any of these physical conditions significantly limited his ability to complete any basic work activities.

There was no error in this conclusion. *See, e.g.*, *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.) (holding the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment," is insufficient to render a condition "severe" within the meaning of the Regulations (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995))).

At step four, the ALJ analyzed Dr. Siddiqui's September 2016 opinion as part of her narrative discussion of the medical opinion evidence. R. at 20. The ALJ discounted Dr. Siddiqui's findings because they were undermined by a series of progress notes and by other medical records in the file. In addition, the ALJ noted that Dr. Siddiqui rendered his conclusions without any kind of discussion of objective findings. Instead, his medical source statement is a series of short fill-in-the-blanks and check-mark boxes.

To be sure, an ALJ is not a medical doctor, and "may not arbitrarily substitute his own

- 11 -

judgment for a competent medical opinion." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (Sharpe, J.) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)). At the same time, however, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Id*. (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

In keeping with that responsibility, the ALJ cannot simply adopt a physician's findings without scrutinizing how they fit in with the entire record of each case. *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). In other words, "the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133.

There was no error in the conclusion drawn by the ALJ in this case. Where, as here, underlying treatment notes are inconsistent with more severe limitations assessed in connection with a medical source statement, an ALJ may properly conclude the provider's opinion should be partially or totally discounted. *See, e.g.*, *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order).

Daniel further claims that the ALJ was obligated to point to *some* contradictory medical provider's opinion about his physical limitations before she could permissibly reject Dr. Siddiqui's opinion about their severity. But that is not necessarily *always* the case.

Most of the time, the ALJ's written decision is an exercise in picking through the various medical opinions in the record to cobble together a final picture of the claimant's functional limitations that is expressed in the RFC. *See, e.g.*, *Robles v. Colvin*, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) ("Ultimately, it is the ALJ's responsibility to 'choose

between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.'" (quoting *Crofoot v. Comm'r of Soc. Sec.*, 2013 W L 5493550, at *8 (N.D.N.Y. 2013))).

However, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion." *Lewis v. Colvin*, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014). In certain circumstances, "especially where the medical evidence shows relatively minor physical impairments, 'an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Id*. (quoting *House v. Astrue*, 2013 WL 442058, at *4 (N.D.N.Y. Feb. 1, 2013) (Sharpe, J.)).

Finally, Daniel contends the ALJ "failed to fill the gaps in the record" she created by discounting Dr. Siddiqui's opinion. In other words, plaintiff argues the ALJ should have ordered a consultative physical examination, or perhaps developed the record in some other way, so that she had a medical opinion to work from in determining the nature and extent of his exertional limitations.

This argument is also rejected. Although the non-adversarial nature of disability benefits hearings impose upon an ALJ a heightened duty to develop the record, that duty is not without limit. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed to exhort the ALJ that the case is ready for decision—and then later fault the ALJ for not performing a more exhaustive investigation.").

In this case, Daniel initially alleged disability based on various mental impairments, the combined effects of which eventually caused him to stop working and apply for disability. Evidence of those impairments, and the possible limiting effects of those

impairments, is present throughout the medical and administrative record.

At Daniel's ALJ hearing, his representative indicated to the ALJ that the record was complete and ready for a decision on plaintiff's claim that his *mental* impairments rendered him disabled. Then, when plaintiff raised for the first time his claim that *physical* limitations also rendered him disabled, the ALJ parsed the record for evidence that might substantiate this new component of plaintiff's claim.

In her written opinion, the ALJ thoroughly explained why the record evidence on this issue was insufficient to warrant further exploration. Nevertheless, the ALJ properly referenced plaintiff's assertions of physical limitations at various points in her sequential evaluation. Eventually, after considering the record at length and properly focusing on the mental impairments that brought plaintiff into the disability office in the first place, the ALJ concluded plaintiff was not disabled within the meaning of the Act.

This is how the disability review process is supposed to work. Indeed, Daniel does not now claim that the ALJ erred at any point in her evaluation of his mental impairment or her conclusion about how this impairment limited his ability to perform a full range of work. Instead, plaintiff is asking for a remand to develop a completely different[5] issue, and one he failed to raise until the eleventh hour. Under the peculiar circumstances of this case, there is no basis on which to second-guess the ALJ's decision.

## IV. CONCLUSION

The ALJ applied the appropriate legal standards and supported her written decision with substantial evidence in the record.

---

[5] In making this statement, the Court recognizes that it is the *combined* effect of a claimant's exertional and non-exertional limitations that governs the RFC finding.

Therefore, it is

ORDERED that

1. Daniel's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Daniel's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and to close the file.

IT IS SO ORDERED.

Dated:  May 22, 2019
        Utica, New York.                    _____
                                            United States District Judge